IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIMOTHY HAMILTON,        )
                                  )
        Plaintiff,        )
                                  )     NO. 3:19-cv-00755
v.                           )     JUDGE RICHARDSON
                                  )
FRANKLIN, TENNESSEE, et al.,    )
                                  )
        Defendants.     )
                                  )
                                  )

## <u>MEMORANDUM OPINION</u>

Pending before the Court are three motions for summary judgment (Doc. Nos. 26, 30, 32,

each a "motion" and collectively, the "Motions"), filed by Defendants the City of Franklin,

Tennessee ("Franklin"), Tyler Wiggers, and Nicholas Smith respectively. Plaintiff filed a single

response to the motions filed by Defendants Wiggers and Smith (Doc. No. 42)[1] and a separate

response to the motion filed by Defendant Franklin (Doc. No. 44). Each Defendant filed a reply.

(Doc. Nos. 47-49). For the reasons stated herein, all three Motions will be granted.

## FACTUAL BACKGROUND[2]

---

[1] Defendant Wiggers and Defendant Smith brought separate motions, but each of these motions incorporates the other and makes identical arguments in support of summary judgment. (Doc. Nos. 30 at 7, 32 at 2). Thus, Plaintiff's choice to file a combined response to these two motions makes perfect sense.

[2] Unless otherwise noted, the facts in this section are taken from facts in the Complaint that are not disputed (Doc. No. 1), Plaintiff's Response to Statements of Undisputed Facts by Defendant City of Franklin (Doc. No. 45), and Plaintiff's Response to Statements of Undisputed Facts by Defendants Nicholas Smith and Tyler Wiggers. (Doc. No. 43). Whatever its source, each noted fact is, based on the record, plainly undisputed, unless prefaced in in some way (for example by "Plaintiff contends that") illustrating a dispute.

On September 3, 2018, Plaintiff was driving a vehicle in Franklin (Williamson County), Tennessee with his girlfriend, Kanesha Vaughn, in the passenger seat (Doc. No. 43 at 3). The two were on their way home from the nearby mall. (Doc. No. 1 at 3). On the way, Plaintiff and Ms. Vaughn stopped at a Twice Daily store on Highway 96 West. (Doc. No. 43 at 3). At the time, Defendant Nicholas Smith and Defendant Tyler Wiggers (collectively, the "Individual Defendants") were police officers with the Franklin Police Department. (Doc. No. 45 at 1). As of the date at issue (September 3, 2018), the Individual Defendants were assigned as partners and working in an unmarked police car. (Doc. No. 43 at 2). Defendants contend that the Individual Defendants pulled into the Twice Daily store at the same time that Plaintiff and Ms. Vaughn were exiting. (*Id.* at 3).

There is one (and only one) westbound lane on Highway 96 where it intersects with 11th Avenue. (*Id.* at 5). This single lane is for both vehicles continuing west and vehicles turning right onto 11th Avenue North. (*Id* at 6.). There is no "right turn only" lane there. (*Id.*). Upon leaving the Twice Daily store, Plaintiff turned into the shoulder of Highway 96 West, rather than the westbound lane. (*Id.*). Still on the shoulder, he then drove past the vehicles properly located in the westbound lane to turn right on 11th Ave North. (*Id.* at 7-8). Defendants contend that Smith and Wiggers witnessed Plaintiff drive on the shoulder, though Plaintiff states that neither he nor Ms. Vaughn ever saw the officers at the Twice Daily store (*Id.* at 8). The Individual Defendants left the Twice Daily store, but lost sight of Plaintiff's vehicle. (*Id.* at 10).

After turning right onto 11th Ave North, Plaintiff turned right onto Green Street. (*Id.*). On Green Street, Plaintiff came to his uncle's house where he stopped in the road to speak with his uncle who was sitting on the porch. (Doc. No. 1 at 3). The Individual Defendants proceeded down 11th Ave North, and eventually passed by Plaintiff while he was speaking with his uncle on Green

Street. (Doc. Nos. 1 at 3, 43 at 10). At some point, the Individual Defendants observed that Plaintiff's vehicle had aftermarket window tint. (Doc. No. 43 at 4).

After finishing his conversation with his uncle, Plaintiff continued down Green Street and turned right into the parking lot of Green Street Church of God, where he often parked his car. (Doc. No. 1 at 3-4). The Individual Defendants pulled in behind Plaintiff, got out of their vehicle, and approached Plaintiff and Ms. Vaughn, who had also exited their vehicle. (*Id.* at 4). The Individual Defendants directed Plaintiff and Ms. Vaughn to return to their vehicle, but the two refused to do so. (*Id.*). Defendant Smith asked Plaintiff where his license was, and Plaintiff then asked the officers why he was being stopped and why they needed his license. (Doc. No. 43 at 16-17).

The interaction continued, and at some point, Plaintiff sat on the hood of his car, and Defendant Smith stood in front of him. (*Id.* at 20). Defendant Smith then informed Plaintiff of the reasons for the traffic stop. (*Id*. at 21). At that point Plaintiff provided Smith with his driver's license. (*Id.*). A few moments later, Plaintiff stepped away from the vehicle and was directed to sit down, at which point he yelled, "I'm not having a seat." (*Id*. at 22). Defendant Smith told Plaintiff to turn around, and Plaintiff again took some steps back away from the officers. (*Id.* at 22-23).

The Individual Defendants approached and attempted to grab Plaintiff's arms to handcuff him, at which point Plaintiff put his hands up in the air. (*Id.* at 23-24). The Individual Defendants each grabbed one of Plaintiff's arms and tried to place him in handcuffs but were unsuccessful. (*Id.* at 24). Plaintiff was pushed onto the hood of his vehicle and handcuffed. (Doc. Nos. 1 at 5, 43 at 25). The Individual Defendants contend that the officers informed Plaintiff he was under arrest.[3]

---

[3] In his response to the Individual Defendants' statement of facts, Plaintiff disputes that either officer informed him he was under arrest. (Doc. No. 43 at 25). However, Plaintiff's Complaint states that prior to

(Doc. No. 43 at 25). Plaintiff was searched and then placed in a police vehicle and transported to Williamson County Jail by a third officer, Marc Swain, who had arrived at the scene a few minutes earlier. (*Id.* at 26-27).

Prior to being placed in the police car, Plaintiff gave his car keys to Ms. Vaughn. (Doc. No. 43 at 26). After Plaintiff was removed from the scene, the Individual Defendants requested a drug dog to come do a sniff search of the car. (Doc. Nos. 1 at 6, 43 at 28). The drug dog, provided by Williamson County (Tennessee), alerted on Plaintiff's vehicle. (Doc. No. 43 at 29-30). The Individual Defendants searched the vehicle but found no drugs. (*Id.* at 30). Ms. Vaughn and the car were released at the scene. (*Id.* at 31).

The entire incident was captured on officer body cameras, and that footage was provided to the Court to aid in its review of the present Motions. (Exhibit 9 Smith Body Cam Footage, Exhibit 10 Wiggers Body Cam Footage, and Exhibit 11 Swain Body Cam Footage).

## PROCEDURAL BACKGROUND

Plaintiff filed the present action on August 27, 2019, asserting four federal claims and two state-law claims against all Defendants. Each of the federal claims (Counts I through IV) was premised on 42 U.S.C. § 1983, and they were styled respectively as: unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, false imprisonment/false arrest in violation of the Fourth and Fourteenth Amendments, excessive force in violation of the Fourth and Fourteenth Amendments, and failure to intervene. The state-law claims were premised on the Tennessee Governmental Tort Liability Act ("TGTLA"), and were styled, respectively, as common law false arrest and common law false imprisonment.

---

being handcuffed, "[o]ne of the defendants told Plaintiff that he was under arrest." (Doc. No. 1 at 5, ¶¶ 37-40).

Defendants filed the respective Motions and accompanying memoranda in support on December 21, 2020.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

It is typically stated that the party bringing the summary judgment motion (the movant) has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *See, e.g. Johnson v. Ford Motor Co*., 13 F.4th 493, 502 (6th Cir. 2021) ("'At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact.'" (quoting *White v. Baxter Healthcare Corp*., 533 F.3d 381, 389–90 (6th Cir. 2008)); *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). But this is somewhat inexact in

the aftermath of 2010 amendments to Rule 56. The movant's initial burden actually is to demonstrate the absence of a genuine issue of material fact, and not necessarily to so demonstrate specifically by referencing portions of the record. True, prior to the 2010 amendments, referencing portions of the record seemed to be the only way to make such a demonstration, and even today that is the primary way to make such a demonstration.[4] But the 2010 amendments added, *inter alia* Rule 56(c)(1)(B), which "recognizes that a party need not always point to specific record materials." Rule 56 2010 Amendment Advisory Committee Note.

Under Rule 56(c)(1)(B), the movant actually has another available means—an alternative to *citing materials in the record*—for demonstrating the absence of a genuine issue of material fact. Specifically, the moving party may meet its initial burden (to indicate the absence of a genuine issue of material fact) by "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support [a material] fact" (for example, the existence of an element of a nonmovant plaintiff's claim). *See* Fed. R. Civ. P. 56(c)(1)(B).[5] If the

---

[4] Under current Rule 56, a party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—still can (and typically does) attempt to support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c)(1)(A).

[5] More specifically, Rule 56(c)(1)(B), as added in 2010, provides in pertinent part that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). This means, specifically in the case of a party asserting that a fact *cannot be* genuinely disputed (which typically would be the summary judgment *movant*), that its assertion can be supported by "show[ing]"—even without citing materials of record—that the adverse party (typically the *non-movant*) cannot produce admissible evidence to support the fact.

summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[6]

## DISCUSSION

### I. <u>Defendant Franklin Is Entitled to Summary Judgment on all federal claims</u>

The Court will first consider the motion for summary judgment of Defendant Franklin (Doc. No. 26, "Defendant Franklin's Motion"). Defendant Franklin argues that Plaintiff's Complaint "contained not a single factual allegation supporting municipal liability" under Section 1983. (*Id.* at 8). For municipalities to be liable under Section 1983, a plaintiff must make "a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by [the city] or its agent." *Ward v. Reynolds*, No. 3:20-CV-00981, 2021 WL 3912803, at *3 (M.D. Tenn. Sept. 1, 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

In the memorandum in support of Defendant Franklin's Motion (Doc. No. 27), Defendant Franklin states that it is unclear from the Complaint what theory of municipal liability Plaintiff is asserting. (Doc. No. 27 at 10). Lacking a clear sense of the theory it needs to debunk, Defendant Franklin attacks a variety of potential avenues for municipal liability including: a formally promulgated policy, a final decision by a policymaker, a deliberate indifference to a custom of unconstitutional acts, a failure to screen employees, a failure to train employees, and a failure to supervise/discipline employees. It is not until Plaintiff's Response to Defendant Franklin's Motion that Plaintiff clarifies he is asserting municipal liability under Section 1983 on a failure-to-train theory. (Doc. No. 44 at 4). Specifically, Plaintiff argues that Defendant Franklin "failed to

---

[6] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

adequately train their officers in de-escalation techniques" to deal with "individuals who were angry or upset during a traffic stop." (*Id*. at 1).

"[T]o substantiate his failure to train claim, [plaintiff] must satisfy three separate elements: '(1) that a training program is inadequate to the tasks the officers must perform; (2) that the inadequacy is the result of the [county's] deliberate indifference; and (3) that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'" *Anderson v. Jones*, 440 F. Supp. 3d 819, 836 (S.D. Ohio 2020) (quoting *Harvey v. Campbell Cty.*, 453 F. App'x 557, 562 (6th Cir. 2011)). Defendant Franklin challenges Plaintiff's ability to make an adequate showing as to the second element in particular: deliberate indifference. Deliberate indifference can be demonstrated in two ways. The first is a plaintiff "showing that the municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). In a "narrow range of circumstances," there is a second option where a plaintiff can show deliberate indifference based only on a "single instance of unconstitutional conduct." *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 408 (6th Cir. 2022) (quotations omitted). A plaintiff can prevail under this second option by showing that the "municipality was deliberately indifferent by 'fail[ing] to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 409 (1997))). Plaintiff does not specify which approach he is taking. But because he makes no reference to previous complaints against the Franklin Police Department or a history of constitutional violations by the officers, the Court presumes that he intends to pursue the second option of proving deliberate indifference.

The following facts relevant to the second element of a failure-to-train theory for municipal liability are undisputed for purposes of summary judgment. Officers hired by Defendant Franklin must be a graduate of an approved law enforcement training academy that is certified by the State of Tennessee Peace Officer Standards and Training Commission. (Doc. No. 29-9 at 2). The Individual Defendants met all state-law training requirements. (*Id.*). Prior to becoming full-service officers, new hires with Defendant Franklin must complete the Franklin Police Department Field Training Officer ("FTO") program, where they spend 14 weeks rotating shifts between three different FTOs. (*Id.* at 2-3). The Individual Defendants satisfactorily completed their respective FTO programs. (*Id.* at 3). Additionally, Defendant Franklin notes (Doc. No. 47 at 4) that Wiggers testified that just a month and a half prior to the September 3, 2018 incident here at issue (which involved Plaintiff as a black man and the Individual Defendants as white officers),[7] he had attended a training on racial intelligence and engagement, which Wiggers testified "mainly focused on de-escalation [sic]" (Doc. No. 44-2 at 2). Defendant Franklin also notes (Doc. No. 47 at 4) that Smith likewise testified that he had had de-escalation training, although he could not remember when. (Doc. No. 44-3 at 2).

On a summary judgment motion, it is the movant's burden to initially show a lack of genuine dispute as to a material fact. Here, Defendant Franklin points to sufficient facts to suggest preliminarily that there is a lack of genuine dispute as to the second element of a failure-to-train

---

[7] The Court does not make this observation because this case is about race; to their credit, the Parties have been clear in articulating (and disciplined in tailoring their arguments based on) their view of what this case is about, and they have never expressed the view that it is to a degree about the fact that the Individual Defendants are white and Plaintiff is black. The Court follows the lead of the parties and perceives the case likewise. The Court makes this observation for a different reason: to provide possible context for Wiggers' testimony, by providing a potential reason why Wiggers could have thought that de-escalation training provided specifically in the context of instruction on "racial intelligence and engagement" would be relevant to the situation involving Plaintiff.

theory of municipal liability: whether Defendant Franklin was deliberately indifferent to its (allegedly) inadequate de-escalation training. It has done so by pointing to evidence that the applicable officers had had at least some de-escalation training, which suggests that Plaintiff well may lack evidence (required for the second option) that Defendant Franklin is culpable of "fail[ing] to equip law enforcement officers with specific tools to handle recurring situations." Accordingly, the burden shifts to Plaintiff to show there was a genuine dispute.

To make the requisite showing, Plaintiff relies heavily on the fact that the Individual Defendants were unable to give specifics about their de-escalation training. (Doc. Nos. 44-2 at 2, 44-3 at 2). Additionally, Plaintiff states that the actions of the Individual Defendants during the traffic stop were "argumentative" and did not help de-escalate the situation. (Doc. No. 44 at 6). However, none of these facts (or purported facts) suggest that whatever Defendant Franklin did or did not provide in terms of de-escalation training amounts to a "failure to equip" its officers regarding de-escalation. The undersigned is loath to effectively adopt a rule essentially dictating that if officers cannot recount details of their training on a topic, a plaintiff necessarily has evidence sufficient for a jury to find that their employing municipality failed to equip them (via training) as to a topic; the focus needs to be on what training the municipal employer did or did not provide, and not on what the officer(s) can recall about what was provided.[8] And as for Plaintiff's reliance

---

[8] To be clear, an officer's inability to recount details of the provision of the training, and/or details of what was (or should have been) learned at the training, may be relevant to whether the municipal employer's training, such as it was, was inadequate to absolve it of "failing to equip" the officers. But the mere fact that the officers at their deposition could not recount details is not—even when combined with an alleged "failure" by them during the incident in question—sufficient for a jury to find that the municipal employer failed to equip the officers with respect to the concerns intended to be addressed via the training. Though reluctant to put ideas into counsel's head, the undersigned does have in mind particular kinds of evidence that (if it existed) conceivably could support the jury finding the existence or non-existence of particular circumstances that would support a jury finding of failure to equip. But Plaintiff has not pointed to such evidence.

on the Individual Defendants' allegedly "argumentative" approach and corresponding alleged failure to de-escalate the situation, these alleged circumstances suggest at most that the Individual Defendants simply did a bad job at de-escalating the situation with Plaintiff, and not that Defendant Franklin "failed to equip" them to do an adequate job de-escalating the situation.

"[A] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 861 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2671, 206 L. Ed. 2d 824 (2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). And a successful failure-to-train theory of liability based on a single incident is quite rare. *See Gambrel*, 25 F. 4th at 410 (citing *Connick*, 563 U.S. at 64 ("The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.")). As Plaintiff has failed to show a genuine dispute at to whether Defendant Franklin was deliberately indifferent, Defendant Franklin's motion for summary judgment will be granted as to all of Plaintiff's Section 1983 claims.

## II.     **The Individual Defendants are entitled to summary judgment on all federal claims**

The Individual Defendants seek summary judgment on all of Plaintiff's claims brought under 42 U.S.C. § 1983, arguing both that there is no genuine dispute as to certain material facts as to those claims and also (relatedly) that they are entitled to qualified immunity. For efficiency purposes, the Court will first analyze the Individual Defendants' qualified-immunity argument before proceeding (if necessary) to the Individual Defendants' arguments attacking Plaintiff's ability to present sufficient evidence to support his claims.

Qualified immunity protects government officials from civil suits for damages, so long as their conduct "does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court is required to employ a two-part test to determine whether a government official is entitled to qualified immunity. *Id.* at 695. It must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020). Courts are permitted to address the prongs of qualified immunity in any order. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009). By asking if the right was clearly established (the second prong/question), the Court is really asking whether "the defendant reasonably should have known that his conduct violated it." *Duren v. Byrd*, No. 1:18-CV-00084, 2021 WL 3848105, at *21 (M.D. Tenn. Aug. 26, 2021). Notably, this means that the customary framing of the second element is somewhat imprecise; the question ultimately is not just whether *the right allegedly violated was clearly established*, but actually whether *the defendant's conduct clearly violated a (clearly established) constitutional right*. Nevertheless, like other courts, the Court herein at times will use the shorthand reference to the "right" being clearly established without referring explicitly to the requirement that it be clear that the officer's conduct violated such right.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) ("'[T]he plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity.'") (quoting *Courtright v. City of Battle Creek*, 839 F.3d at 513, 518 (6th Cir. 2016)). Therefore, to survive a summary judgment motion, Plaintiff must make a sufficient showing that (1) the defendant violated a constitutional right and (2) that right was clearly

established. In other words, Plaintiff must, at a minimum, offer sufficient evidence to create a "genuine issue of fact;" that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Richards v. Cty of Washtenaw*, 818 F. App'x 487, 490 (6th Cir. June 24, 2020) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)).

### A. Count I: Unreasonable Search and Seizure

Plaintiff's Complaint groups his unreasonable search and seizure claims into a single Count, though it appears he is alleging multiple discrete violations. Plaintiff first appears to allege that an unreasonable seizure occurred when the Individual Defendants "unlawfully detained" Plaintiff by making a traffic stop even though "Plaintiff did not commit a traffic violation." (Doc. No. 1 at 7). Plaintiff next appears to allege an unlawful seizure when the Individual Defendants handcuffed and arrested him. (*Id.* at 5, Doc. No. 42 at 9). Plaintiff then alleges that an unreasonable seizure occurred in the form of a detention allegedly prolonged "beyond what was reasonable in order to wait for the K9 officer." (Doc. No. 1 at 8). Finally, Plaintiff alleges that the (warrantless) search of his car was unreasonable. (*Id.* at 8, 9; Doc. No. 42 at 9). The Court will analyze each of the four potential violations of Plaintiff's Fourth Amendment rights separately.

Some of these alleged violations are based on the assertion that the Individual Defendants lacked probable cause or reasonable suspicion to take some action affecting Plaintiff. Thus, regarding the second prong of the qualified-immunity analysis, it is important to keep in mind a particular reality concerning when a defendant reasonably should have known that there was an absence of probable cause:

> Because probable cause "cannot be 'reduced to a neat set of legal rules'" and is "'incapable of precise definition or quantification,'" police "'officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered.'"

*Hernandez v. Boles*, 949 F.3d 251, 261 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 847 (2020) ((quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, (1983))). The same surely applies equally to the difficulty of knowing how the standard of reasonable suspicion applies in the precise situation encountered.

> 1. *Plaintiff has failed to show evidence sufficient for a jury to find that his seizure in the form of the initial traffic stop was unreasonable.*

Plaintiff's Complaint claims that his detention in the form of the traffic stop was unreasonable because (according to him) "Plaintiff did not commit a traffic violation." (Doc. No. 1 at 7). Immediately thereafter, apparently reflecting a correct understanding that a traffic stop can be lawful (if based on probable cause or, outside the Sixth Circuit, reasonable suspicion) even if the suspected violation did not actually occur, Plaintiff's Complaint states that the officers "had no reasonable, articulable [grounds for] reasonable suspicion or probable cause which would justify initiating a traffic stop." (*Id.*). On the other hand, Plaintiff's Response appears to argue instead that his Fourth Amendment rights were violated during the initial traffic stop because (according to him) he was "detained without notice"; by this, Plaintiff, asserting that he "did not know that he was detained when he was approached by [the Individual] Defendants," appears to mean that he did not know or have notice that he had been detained by police officers invoking their authority to conduct a traffic stop.[9] (Doc. No. 42 at 9).

To the extent Plaintiff continues to rely on the theory from his Complaint (*i.e.*, that he did not commit a traffic violation), it is undisputed that Plaintiff turned out of the Twice Daily store into the shoulder of Highway 96, where he continued to drive in an effort to pass other vehicles

---

[9] Plaintiff bases this assertion on (i) the fact that the police car was unmarked; and (ii) his claim that neither he nor his passenger "saw the unmarked police vehicle until after Mr. Hamilton and Ms. Vaughn had parked in the church parking lot and exited their vehicle" and his claim that he "did not see lights on the unmarked police car to indicate to him that he was being detained." (Doc. No. 42 at 9-10).

and make a right turn. (Doc. No. 43 at 6-7). This is a clear violation of Tennessee law. *See* Tenn. Code Ann. § 55-8-118(b) ("A driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting that movement in safety. In no event shall the movement be made by driving off the pavement or main-traveled portion of the roadway."). Thus, there is no genuine dispute that there is probable cause to believe that Plaintiff committed at least one of the three alleged traffic violations. And police do not violate the Fourth Amendment when they have probable cause to believe a traffic violation occurred and they subsequently make a traffic stop. *Whren v. U.S.*, 517 U.S. 806, 810 (1996).[10]

As to the argument raised in Plaintiff's Response—that the traffic stop was somehow unlawful because (allegedly) he lacked knowledge or notice that he was being detained pursuant to an officer's legal authority to make traffic stops—it is a non-starter because Plaintiff fails to cite to any case law supporting the notion that a stop can be unlawful merely because the driver lacked such notice or knowledge. Accordingly, Plaintiff has failed to make a sufficient showing that a constitutional right was violated when he was initially detained for a suspected traffic violation, let alone a sufficient showing that such a right was clearly established. The Individual Defendants are entitled to qualified immunity on this claim.

---

[10] Every circuit, except for the Sixth Circuit, has held that reasonable suspicion (even if it does not rise to the level of probable cause) suffices to justify an investigatory stop for a traffic violation. *United States v. Simpson*, 520 F.3d 531, 540 (6th Cir. 2008) (collecting cases). The Sixth Circuit applies "the probable cause standard to 'completed' misdemeanor traffic violations." *United States v. Jeffries*, 457 F. App'x 471, 477 (6th Cir. 2012) (citing *United States v. Hughes*, 606 F.3d 311, 316 n.8 (6th Cir. 2010)). However, the Sixth Circuit applies the reasonable suspicion standard to misdemeanor traffic violations that are "ongoing." *Id.* (citing *Simpson*, 520 F.3d at 540)*; see also Simpson*, 520 F.3d at 541 (applying the reasonable-suspicion standard to the traffic violation there at issue because "failure to keep a license plate 'clearly legible' is an ongoing violation"). The traffic violation discussed above (although not necessarily the alleged window-tint violation) is a "completed violation" and thus is subject to the requirement of probable cause. The fact that reasonable suspicion is insufficient in the Sixth Circuit is immaterial here because the undisputed facts establish probable cause that a traffic violation occurred.

2. *Plaintiff failed to show evidence sufficient for a jury to find that he seizure via his being handcuffed, and ultimately arrested, was unreasonable.*

Though it is not clear from the Complaint, it appears possible from Plaintiff's Response that he asserts a Fourth Amendment unreasonable seizure claim based specifically on the officers handcuffing him during his detainment. The Individual Defendants argue that officers can handcuff and detain an unarmed individual if the individual "present[s] a risk to officer safety." (Doc. No. 12 (citing *Kowolonek v. Moore*, 463 Fed. Appx. 531, 536 (6th Cir. 2012))). Moreover, the Individual Defendants state that the body cam footage shows Plaintiff was "non-compliant," "visibly agitated," and "verbally combative" during the interaction, which made it reasonable for the officers to handcuff him for their safety. (Doc. No. 30 at 12-13 (citing Exhibit 9 Smith Body Cam Footage 04:00 - 04:20, Exhibit 10 Wiggers Body Cam Footage 02:45 – 03:10)).

As suggested by the Individual Defendants, it is appropriate for an officer to handcuff an individual for safety purposes even if the individual is being merely detained and not (yet) arrested. *See United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (citing *Houston v. Does*, 174 F.3d 809, 814 (6th Cir. 1999)) (police responding to an anonymous tip of crime occurring in a motel room did not violate the Fourth Amendment by handcuffing one of the individuals in the room based on his nervous behavior). And the Court agrees that the body cam footage cited by the Individual Defendants shows Plaintiff behaving in an agitated and combative manner. Accordingly, the Court finds the Individual Defendants have met their initial burden of showing a lack of genuine dispute as to whether they are entitled to qualified immunity for handcuffing Plaintiff during a detention.

In response, Plaintiff has offered no case law suggesting that he has a constitutional right to not be handcuffed while detained pursuant to a traffic stop under the circumstances here at issue, nor does he offer evidence or argument as to why the particular circumstances support the

conclusion that the handcuffing here was unreasonable and thus in violation of the Fourth Amendment. He has thus failed to make a showing as to the first prong of qualified immunity, and the Individual Defendants are entitled to qualified immunity as to this claim.

> 3. *Plaintiff has failed to show evidence sufficient for a jury to find that he was unreasonably seized due to a prolonging of the detention pending the arrival of the K9 officer.*

Plaintiff argues that the Individual Defendants "violated [his] constitutional rights by prolonging the traffic stop to request a K9 [search] without sufficient reasonable suspicion." (Doc. No. 42 at 13). The law is clear that a traffic stop generally cannot be continued longer than is necessary for the original purpose of the stop to be satisfied. *See U.S. v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005). But a stop can be extended if officers have "reasonable and articulable suspicion that criminal activity [is] afoot." *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). In forming reasonable suspicion, officers may draw on their "experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). While a "mere hunch" is not enough, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (citations omitted).

Plaintiff argues that the Individual Defendants lacked reasonable suspicion to extend the stop to allow for a K9 unit to arrive. The Individual Defendants respond that they had reasonable suspicion based on the following observations: the amount of cash found on Plaintiff's person; the denominations of the cash; the cash being in a rubber-banded "wad"; Plaintiff's refusal to return

to the car; Plaintiff having been stopped in the road talking to someone; and Plaintiff's "agitated and noncompliant state" during the stop. (Doc. No. 33 at 17).

As Plaintiff correctly notes, the cash found on his person was not un-banded, let alone counted, until *after* the officers had called for a K9 unit. Therefore, the Individual Defendants cannot rely on either the total amount or denominations of the cash in the wad to support reasonable suspicion to call the K9 unit and extend the stop. (Exhibit 9 Smith Body Cam Footage at 53:00). Additionally, although he is aware that at least under some circumstances a subject's being agitated in an encounter with the police can support reasonable suspicion, the undersigned believes that in some cases an individual's refusal to return to their car or being in an agitated state during a traffic stop just as easily could reflect an innocent person being upset by an undeserved disruption of his day as it could reflect the individual being in the midst of criminal activity and thus trying to avoid dealing with the police. The facts here, including those observable on the video recordings, do not serve as the basis for reasonable suspicion to believe that Plaintiff was up to some drug-related criminal activity rather than merely being upset with what he could have perceived as unwarranted intrusion and harassment. The Court additionally does not believe that a person merely stopping to talk with someone in the road, absent some additional circumstances such as a hand-off of items or money between the two individuals, supports reasonable suspicion of drug activity. That leaves only one factor remaining as potentially supporting reasonable suspicion: the rubber-banded "wad" of cash. Despite its awareness that reasonable suspicion is not a high bar, the Court does not believe this alone serves as sufficient support for reasonable suspicion, and therefore Plaintiff has shown at the very least a genuine issue as to whether his constitutional right to be free from unreasonable seizures was violated when officers extended the traffic stop beyond the original purpose (in order to pursue a new purpose of investigating potential drug activity) to wait for a K9 unit.

However, as noted above, that is not the end of the inquiry as to qualified immunity, because the Plaintiff must show that reasonable officers in the position of the Individual Defendants should have known their actions violated this right. There are Sixth Circuit cases where rubber-banded currency was considered evidence supporting reasonable suspicion (*see U.S. v. Morris*, 533 F. App'x 538, 540 (6th Cir. 2013), as is nervousness/agitation (*see U.S. v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998), and trying to leave/exit the conversation (*see id*.). Plaintiff has not cited to any case suggesting those cases are no longer governing law in the Sixth Circuit; and he certainly has not cited any Supreme Court case law to the contrary. Therefore, Plaintiff has failed to sufficiently show that no reasonable officer would have thought he (the officer) had reasonable suspicion to extend the initial traffic stop to allow for a K9 search. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'") (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

4. *Plaintiff abandoned his claim related to the warrantless search of his vehicle after the K9 alert.*

A warrantless search of an automobile generally is violative of the Fourth Amendment, unless the so-called "automobile exception" applies. *See Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019*).* "The automobile exception permits officers to search a vehicle without a warrant if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *Id.* (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)); *see also Hernandez*, 949 F.3d at 259 ("It is blackletter law that the police can lawfully search a car without a warrant if they have probable cause."). Here it is undisputed that the car was searched without a warrant, but the Individual Defendants assert the existence of probable cause, relying largely on the above-referenced list of circumstances. (Doc. No. 33 at 18-19). But as noted above in its analysis of

whether there was reasonable suspicion to support prolonging the initial traffic stop, the Court concludes that these circumstances count for little toward reasonable suspicion, and they count still less toward a finding of probable cause. But the Individual Defendants also rely on the undisputed fact that the K9 had a positive hit on Plaintiff's car. (*Id.* at 19).

However, the Court need not analyze the Individual Defendants' argument, because Plaintiff actually abandoned this claim by failing to respond at all to the argument on this claim. *See Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (citing *Hicks v. Concorde Career Coll*., 449 F. App'x. 484, 487 (6th Cir. 2011)); *Ashbrook v. Ethicon Inc*., 514 F. Supp. 3d 971, 974 (E.D. Ky. 2021) (finding that a plaintiff abandoned its claims when it "failed to respond" or "otherwise address" the defendant's summary judgment arguments). Accordingly, the Individual Defendants will be granted summary judgment as to Plaintiff's claim for unreasonable search and seizure premised on the warrantless search of his vehicle.

### B.       Count II: False Arrest and False Imprisonment

As with the previous claim, the Court finds Plaintiff abandoned his Section 1983 claims based on false imprisonment and false arrest by failing to respond to the Individual Defendants' summary judgment argument on these claims. Nonetheless, at its option the Court will consider the Individual Defendants' qualified immunity defense as an alternative basis for granting summary judgment. "Under both federal and state law 'the claims of false arrest and false imprisonment are the same' . . . when the alleged false imprisonment arises out of an alleged false arrest by a law-enforcement officer." *Weser v. Goodson*, 965 F.3d 507, 517 (6th Cir. 2020)

(quoting *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *20 (E.D. Tenn. Dec. 12, 2005)). Such is the case here.

Here, the Individual Defendants argue that Plaintiff resisted their attempts to handcuff him, which constitutes a violation of Tenn. Code Ann. § 39-16-602(a),

> [i]t is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

And if an officer has probable cause to believe an individual is violating the law, an arrest without a warrant does not violate the Fourth Amendment. *See Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Thus, if the Individual Defendants had probable cause to believe that Plaintiff was using force to resist the officers lawfully placing him in cuffs during the detention, then they would have probable cause to arrest him under Tenn. Code. Ann. § 39-16-602(a). The Individual Defendants cite to body cam footage, which appears to show Plaintiff pulling his arms away from the officers attempting to detain him, and therefore resisting the detention. (Exhibit 11 Swain's Body Cam Footage at 00:30 to 00:46). As the Individual Defendants have satisfied their initial burden, it shifts to Plaintiff to make a showing that there is a genuine dispute as to whether he resisted the attempted handcuffing.

Plaintiff failed to cite to any evidence suggesting he did not resist being placed in handcuffs, and consequently failed to make a sufficient showing that the Individual Defendants violated his constitutional rights. The Individual Defendants are entitled to qualified immunity on Count II.

### C.    Count III: Excessive Force

"The Fourth Amendment prohibits law enforcement officers from using excessive force when making an arrest." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 943 (6th Cir. 2017). Plaintiff's Complaint states that Defendants "slammed [him] down on the hood of vehicle," as well as "jerked him back and forth," which Plaintiff argues constituted excessive force. (Doc. No. 1 at 5, 11). The Individual Defendants contend that Plaintiff resisted their efforts to handcuff him, which required them to "put Plaintiff on the hood of the car" to "gain control and put Plaintiff in handcuffs." (Doc. No. 33 at 14-15).

The qualified immunity analysis is slightly different in the context of an excessive force claim. As the Sixth Circuit recently noted,

> Given the multitude of settings in which an officer might use force, we must define with specificity the legal rule that the officer allegedly violated. *Rivas-Villegas v. Cortesluna*, —— U.S. ——, 142 S. Ct. 4, 8, 211 L.Ed.2d 164 (2021) (per curiam). In an "obvious case," it is true, general principles suffice. *Id.* More commonly, a plaintiff must identify another case that places the constitutional question beyond debate. *Id.* The facts "need not be identical, but they must be similar enough that the other case squarely governs this one." *Studdard v. Shelby County*, 934 F.3d 478, 481 (6th Cir. 2019) (quotation omitted).

*Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022). The use of force in the present case is far from obviously excessive; and Plaintiff cites to two cases to demonstrate that the Individual Defendants' actions nonetheless clearly violated his constitutional right to be free from excessive force: *Miller v. Sanilac Cnty.*, 606 F.3d 240 (6th Cir. 2010) and *Minchella v. Bauman*, 72 F. App'x 405 (6th Cir. 2003).

*Miller* involves a plaintiff who was pulled over for a traffic stop and arrested for reckless driving. 606 F.3d at 245-46. The Sixth Circuit in *Miller* held that the defendant was not entitled to qualified immunity for excessive force when he slammed the plaintiff into a vehicle and kicked his legs apart, when the plaintiff was non-violent, posed no immediate safety threat, and had not attempted to escape or resist. *Id.* at 253-54. Similarly, in *Minchella*, an officer arrested a woman

during a traffic stop after she allegedly threw her driver's license and registration information at him. 72 F. App'x at 406. The Sixth Circuit in this case held that the officer was not entitled to qualified immunity for excessive force when he twisted the plaintiff's arms, slammed her into his police car, and kicked her in the ankle. *Id.* at 407. While there is video footage from the arrest in *Minchella*, the Sixth Circuit deemed it "inconclusive" as to whether the plaintiff resisted arrest and whether she was kicked by an officer. *Id.* at 409.

The Court does not find either of those two cases to be "similar enough" that they "squarely govern" the present case. *Lee*, 33 F. 4th at 863. There are key differences that make the force used in the present case less clearly unreasonable than the use of force in those cases: one being the absence of any additional use of force outside of "slamming" an individual into a car. Both *Miller* and *Minchella* involved additional acts of force like kicking the legs or twisting the individual's arm. Additionally, the Court finds that the videotape of the incident in question is not inconclusive as to the question of whether Plaintiff resisted arrest. In the body cam footage of Officer Swain, who arrived on the scene around the same time that the Individual Defendants were attempting to handcuff Plaintiff, it is clear that Plaintiff is attempting to pull his arms away from the two men and is not being compliant with the process, thereby resisting the attempted detention. (Exhibit 11 Swain's Body Cam Footage at 00:30 to 00:46). Accordingly, the unconstitutionality of the use of force in the present case is not clearly established, and the Individual Defendants are entitled to qualified immunity on Plaintiff's excessive use of force claim.

### D.  Count IV: Failure to Intervene

Generally, a police officer "who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm

from occurring." *Hall v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-CV-1268, 2019 WL 1601366, at *2 (M.D. Tenn. Apr. 12, 2019) (citing *Smith v. City of Troy, Ohio*, 874 F.3d 938, 945-46 (6th Cir. 2017)). The Individual Defendants seek summary judgment on Plaintiff's claim for failure to intervene on the grounds there was no excessive use of force, and therefore no requirement or ability to intervene. (Doc. No. 30 at 19-20).

The Individual Defendants are correct that an excessive use of force is a prerequisite to liability for a failure to intervene. *See Fazica v. Jordan*, 926 F.3d 283, 290 (6th Cir. 2019) ("[A] reasonable jury could find that each of the named Defendants violated [Plaintiff's] clearly established constitutional rights either by directly using excessive force against her or by observing others doing so and failing to act."). Here, Plaintiff has failed to raise a genuine dispute as to whether there was an excessive use of force by the Individual Defendants, and therefore has failed to raise a genuine dispute as to whether any Defendant failed to intervene to stop such force. Moreover, Plaintiff has abandoned this claim by not responding to the Individual Defendants' summary judgment argument.[11]

Therefore, based on the merits or alternatively by virtue of Plaintiff's abandonment, the Individual Defendants will be granted summary judgment as to Plaintiff's Count IV for failure to intervene.

---

[11] In addition to the above two bases for granting summary judgment on this claim, the Court wishes to note that Plaintiff's Complaint states, "During the events described above, one or more of the defendants stood by without intervening to prevent other defendants from violating Plaintiff's constitutional rights." (Doc. No. 1 at 12). The failure to identify—in either the Complaint or his responses to the Motions—which of the three Defendants (Smith, Wiggers, or the City of Franklin, Tennessee) failed to intervene to stop some other Defendant from violating a constitutional right makes the failure-to-intervene claim exceedingly vague.

**III.** **Plaintiff's State Law Claims for False Arrest and False Imprisonment Will Be Dismissed Without Prejudice**

Plaintiff's final two claims are state-law claims for, respectively, false arrest and false imprisonment brought under the TGTLA. A district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); *see also Kinman v. Burnop*, No. 3:18-cv-00809, 2020 WL 707583, at *6 (M.D. Tenn. Feb. 12, 2020).

When no claims over which the court has original jurisdiction remain, courts usually decline to exercise supplemental jurisdiction over the remaining state-law claims. *See Stevens v. Gooch*, 48 F. Supp. 3d 992, 1007 (E.D. Ky 2014) (in usual case in which all federal law claims have been eliminated before trial, balance of factors point toward declining to exercise jurisdiction over remaining state-law claims); *Carpenter v. Lane College*, Case No. 2:17-cv-2672, 2019 WL 845275, at * 4 (W.D. Tenn. Feb. 6, 2019) (having granted summary judgment on plaintiff's sole federal claim, court followed the "usual Sixth Circuit practice" and declined to exercise supplemental jurisdiction over plaintiff's remaining state law claims); *see also Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 1000-01 (D. Idaho 2019) (after granting summary judgment on plaintiffs' federal claims, court "no longer has federal question jurisdiction, and, in turn, supplemental jurisdiction over any state law claims dissolves"), cited in *Kinman*, 2020 WL 707583, at *6.

The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilkins v. Tennessee Dep't of Children's Servs.*, No. 3:18-cv-00102, 2018 WL 6413666, at *5 (M.D. Tenn. Dec. 6, 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon*, 484 U.S. at 350).

The basis for jurisdiction in this case is federal-question jurisdiction, and because the Court is granting summary judgment to the three Defendants on Plaintiff's federal claims, the Court will no longer have original jurisdiction over any claims upon which the Court's (supplemental) jurisdiction over the state-law claims was based. For that reason, the Court declines to exercise supplemental jurisdiction henceforward over Plaintiff's state-law claims, and they will be dismissed without prejudice.

## CONCLUSION

For the reasons discussed above, the respective Motions of the three Defendants (Doc. Nos. 26, 32, 36) will all be **GRANTED**, and summary judgment will be entered in each Defendant's favor as to all of Plaintiff's federal claims (Count I to Count IV).

Additionally, in the Court's discretion, Plaintiff's state-law claims for false arrest and false imprisonment (Count V and Count VI) will be **DISMISSED without prejudice** pursuant to 42 U.S.C. § 1367(c), and Plaintiff may file them in Tennessee state court if he wishes.[12]

---

[12] The Court offers no opinion regarding the extent to which such claims would be successful if filed in state court.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE